SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff Constantino Joshua Acevedo III

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CONSTANTINO JOSHUA ACEVEDO III, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF RIVERSIDE; CHAD BIANCO, an individual; VICTORIA VARISCO-FLORES, an individual; ALYSSA VERNAL, an individual; RICHARD FRANSIK, an individual and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure – Failure to Intervene (42 U.S.C. § 1983)<br>3. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)<br>4. *Monell* Liability – Unconstitutional Custom, Practice, or Policy [42 U.S.C. § 1983]<br>5. *Monell* Liability – Failure to Train [42 U.S.C. § 1983]<br>6. *Monell* Liability – Ratification [42 U.S.C. § 1983]<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

1. Plaintiff CONSTANTINO JOSHUA ACEVEDO III for his complaint against Defendants COUNTY OF RIVERSIDE and DOES 1-10, inclusive, alleges as follows:

## INTRODUCTION

2. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with the arrest by members of the Riverside County Sheriff's Department and imprisonment by members of the Riverside County Sheriff's Department of Plaintiff CONSTANTINO JOSHUA ACEVEDO III.

## PARTIES

3. At all relevant times, PLAINTIFF was an individual residing in the County of San Bernardino, California. At all times relevant, PLAINTIFF is and was a male of Hispanic and Native American heritage. At all times relevant, PLAINTIFF has and is diagnosed with Aspergers, which is a disease that places PLAINTIFF on the autism spectrum.

4. Defendant CHAD BIANCO ("BIANCO") is an individual and the Sheriff of Defendant COUNTY OF RIVERSIDE. BIANCO is sued in his individual capacity and in his official capacity.

5. Defendant VICTORIA VARISCO-FLORES ("VARISCO-FLORES") is an individual and the correctional captain at the Robert Presley Detention Center, which is owned and operated by the COUNTY. VARISCO-FLORES is sued in her individual capacity and in her official capacity.

6. Defendant ALYSSA VERNAL ("VERNAL") is an individual and the correctional captain at the Larry D. Smith Correctional facility, which is owned and operated by the COUNTY. VERNAL is sued in her individual capacity and in her official capacity.

7. Defendant RICHARD FRANSIK ("FRANSIK") is an individual and the lieutenant in charge of the Norco branch of the Riverside County Sheriff's Department. FRANSIK is sued in his individual capacity and in his official capacity.

8. At all times relevant, Defendant COUNTY OF RIVERSIDE ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all relevant times, COUNTY was the employer of Defendants DOES 1-10, who were various COUNTY Sheriff's deputies; supervisorial officers; and/or managerial, supervisorial, and policymaking employees of the COUNTY Sheriff's department. On information and belief, at all times relevant, DOES 1-10 were residents of the County of Riverside, California. DOES 1-10 are sued in their individual capacity for damages only.

9. At all times relevant, Defendants DOES 1-10 were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as sheriff's deputies and with the complete authority and ratification of their principal, Defendant COUNTY.

10. At all relevant times, Defendants DOES 1-10 were duly appointed deputies and/or employees or agents of COUNTY, subject to oversight and supervision by the COUNTY's elected and non-elected officials.

11. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

12. At all times mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant, and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

13. The true names of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues these defendants by such fictitious names. PLAINTIFF will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously

named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

14. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrence giving rise to this action occurred in the County of Riverside, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as though fully set forth herein.

17. On September 22, 2021, PLAINTIFF, unbeknownst to himself, was suffering from severe kidney failure. Severe kidney failure can manifest in a variety of ways, including delirium and hallucinations.

18. On September 22, 2021, PLAINTIFF was experiencing these symptoms. PLAINTIFF left his home in Fontana with a friend, Andy, in order to get some "fresh air." Andy drove himself and PLAINTIFF to Norco, California to visit some shops.

19. At some point while PLAINTIFF was riding with Andy through Norco, PLAINTIFF decided to exit Andy's car and begin to walk on the side of the road. PLAINTIFF was not threatening himself or anyone around him.

20. Concerned for PLAINTIFF's safety given his erratic behavior, Andy called PLAINTIFF's father, who instructed Andy to call 911 and inform them that PLAINTIFF may be suffering from a mental health crisis and needed help. Andy called 911 and informed them of the same.

21. Sometime later, Sheriffs, including DOES 1-5, arrived at the intersection of Mountain Ave and Second Street in Norco, California. Andy had been slowly following PLAINTIFF while PLAINTIFF walked on the side of the road. When the police officers arrived, they separated Andy and PLAINTIFF and would not let Andy help PLAINTIFF.

22. Despite being informed that PLAINTIFF was possibly suffering from a mental health crisis, the deputies confronted Plaintiff on the side of the road. PLAINTIFF was not resistant to the deputies.

23. On information and belief, the involved Sheriff's deputies unilaterally escalated the situation involving PLAINTIFF when they, on September 22, 2021, without warning, attempted to place PLAINTIFF in handcuffs, beat, and tased PLAINTIFF.

24. PLAINTIFF was struck multiple times with hands, feet, knees, and batons by deputies despite no criminal activity afoot.

25. PLAINTIFF was tased multiple times by deputies despite no criminal activity afoot.

26. During the incident, it was obvious, or it should have been obvious to an objectively reasonable deputy, that PLAINTIFF was experiencing and having a mental health crisis.

27. On information and belief, the involved deputies did not give PLAINTIFF a verbal warning that force would be used before using force against him.

28. There were other reasonable alternatives available to the involved deputies which were not exhausted prior to using extreme and potentially deadly force against PLAINTIFF. Further, the involved deputies escalated the situation which led to the use of potentially deadly force against PLAINTIFF.

29. On September 22, 2021, after beating and tasing PLAINTIFF multiple times, the deputies arrested PLAINTIFF for one count of California Penal Code § 69, a felony.

30. After arresting PLAINTIFF, the deputies took PLAINTIFF, who was battered, bloody, and bruised, to Riverside Community Hospital. PLAINTIFF was examined briefly and released back to the deputies, who took him to the Robert Presley

Detention Center, located at 4000 Orange Street, Riverside, CA 92501, owned and operated by COUNTY.

31. PLAINTIFF's parents were notified of his arrest and incarceration. Despite posting bail immediately, Defendants COUNTY and DOES 6-10 attempted to then move PLAINTIFF to the Larry D. Smith Correctional Facility, located at 1627 Hargrave Street, Banning, CA 92220, which is also owned and operated by COUNTY. PLAINTIFF's parents were not timely notified of this attempted move.

32. While he was in the custody of the COUNTY, PLAINTIFF repeatedly asked for assistance. PLAINTIFF was obviously suffering from a mental health issue, yet the COUNTY and DOES 6-10 did not provide any care or treatment for him and in fact placed him in a general holding cell with at least thirty (30) other arrestees.

33. Further, PLAINTIFF was clearly suffering from some kind of physical ailment, and beyond that was bleeding and bruised from the brutal beat down he suffered at the hands of the Norco Police Officers. Despite repeated requests for help, the COUNTY and DOES 6-10 refused to offer PLAINTIFF any medical assistance.

34. As a result of the beating suffered by PLAINTIFF at the hands of DOES 1-5, PLAINTIFF suffered a head injury, scratches, and a black eye, on top of other bruises and injuries consistent with multiple taser applications.

35. Shortly after his release, it was discovered that PLAINTIFF was suffering from extreme kidney failure and required emergency medical treatment to stabilize his condition.

36. Plaintiff is informed and believes and hereon alleges that Defendant COUNTY has in place specific mental health protocols and units that are to be used to de-escalate situations involving people suffering from mental health crises. Plaintiff is further informed and believes and thereon alleges that Defendants DOES 1-5 did not at any point call for this mental health unit or any other mental health services, despite being aware that PLAINTIFF was suffering from a mental health crisis.

///

# I.

# FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)

(By PLAINTIFF against DOES 1-5)

37. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth herein.

38. DOES 1-5's unjustified beating and tasing of PLAINTIFF deprived PLAINTIFF of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39. The unreasonable use of force by Defendants DOES 1-5 deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

40. As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

41. As a result of the conduct of DOES 1-5, they are liable for PLAINTIFF's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

42. This use of excessive and potentially deadly force was unreasonable under the circumstances, especially since it should have been obvious that PLAINTIFF was having a mental health crisis, and no one was in any danger from PLAINTIFF when he was tased and beaten. In fact, Plaintiff was all alone and a threat to no other person. Defendants' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

43. The conduct of DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-5.

44. PLAINTIFF also seeks attorney fees under this claim.

## II.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure – Failure to Intervene

(By Plaintiff against DOES 1-5)

45. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 44 of this Complaint with the same force and effect as if fully set forth herein.

46. DOES 1-5's unjustified beating and tasing of PLAINTIFF deprived PLAINTIFF of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

47. The unreasonable use of force by Defendants DOES 1-5 deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

48. Furthermore, each of Defendants DOES 1-5 had a duty to intervene in unconstitutional uses of excessive force against PLAINTIFF, and each of them failed to do so.

49. As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

50. As a result of the conduct of DOES 1-5, they are liable for PLAINTIFF's injuries because they failed to intervene in each of the other defendants unconstitutional acts.

51. The use of excessive and potentially deadly force by DOES 1-5 was unreasonable under the circumstances, especially since it should have been obvious that

PLAINTIFF was having a mental health crisis, and no one was in any danger from PLAINTIFF when he was tased and beaten. Defendants' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

52. The conduct of DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-5.

53. Plaintiff also seeks attorney fees under this claim.

## III.
## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Denial of Medical Care**

(By PLAINTIFF against Defendants DOES 6-10)

54. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 53 of this complaint with the same force and affect as though fully set forth herein.

55. On September 22, 2021, after the beating and tasing of PLAINTIFF by DOES 1-5, PLAINTIFF was taken to Riverside County Hospital and briefly examined, but was not treated. PLAINTIFF was not given any treatment or medicine while he was in Riverside County Hospital, despite obviously suffering from numerous lacerations, head injuries, a black eye, and being in shock from being tased multiple times.

56. Other than this brief visit to Riverside Community Hospital, PLAINTIFF received no other treatment for the injuries he suffered at the hands of DOES 1-5.

57. After being released from Riverside Community Hospital, PLAINTIFF was taken to the Robert Presley Detention Center and was held in a cell with approximately thirty (30) other arrestees overnight.

58. At some point, PLAINTIFF was improperly transferred to the Larry D. Smith Correctional Facility in Banning, CA, despite his bail already being posted.

PLAINTIFF was wrongfully held at the Smith Correctional Facility until he was released at midnight on September 24, 2021.

59. Despite numerous pleas for help to DOES 8-10, PLAINTIFF was left in the cell with no further treatment for his quickly deteriorating mental and physical health.

60. On information and belief, DOES 8-10 were deliberately indifferent to PLAINTIFF's medical needs while he was being held in the Robert Presley Detention Center and Larry D. Smith Correctional Facility and the same DOES 8-10 willfully and wantonly denied medical care to PLAINTIFF, who was clearly and obviously suffering from a mental health crisis.

61. The denial of medical care to PLAINTIFF from September 22, 2021 until midnight on September 24, 2021 put PLAINTIFF at substantial risk of suffering serious harm and permanent disabilities.

62. As a direct and proximate result of the decisions of the COUNTY and 6-10, and due to PLAINTIFF's conditions of confinement, PLAINTIFF suffered further serious injuries and substantial physical and emotional pain and suffering.

63. Defendants DOES 8-10 did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved, making the consequences of defendants' conduct obvious.

64. Defendants' conduct constituted unnecessary and wanton infliction of pain and was done with a willful, wanton, and conscious disregard for Plaintiff's constitutional rights, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 8-10.

65. Plaintiff also seeks attorney fees under this claim.

///
///
///
///

## IV.

## FOURTH CLAIM FOR RELIEF

*Monell* Liability – Unconstitutional Custom, Practice, or Policy

(By PLAINTIFF against Defendants COUNTY, BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK)

66. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 65 of this complaint with the same force and affect as though fully set forth herein.

67. At all relevant times, Defendants DOES 1 through 10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

68. The acts of Defendants DOES 1 through 10, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

69. On information and belief, Defendant COUNTY's Sheriff's department has a longstanding practice of escalation during police contacts with citizens, especially when the citizen may be suffering a mental health crisis.

70. Pursuant to this practice, on information and belief, COUNTY's Sheriff's department deliberately use excessive force in order to "break" mentally ill citizens and subject them to unconstitutional practices rather than engaging with them in a way that takes into account the mental illness they are suffering.

71. On information and belief, PLAINTIFF alleges that this practice is rampant and pervasive throughout COUNTY's Sheriff's department, and that it is generally accepted to be the custom of Sheriff's Deputies, specifically those at the Norco branch, to use excessive and unconstitutional force to arrest persons suffering from mental health crises like PLAINTIFF.

72. PLAINTIFF is informed and believes and thereon alleges that the COUNTY is aware that its deputies have a custom and practice to use excessive force when arresting mentally ill persons and has defendant multiple lawsuits related to this pervasive policy, custom, or practice.

73. PLAINTIFF is informed and believes that COUNTY has not disciplined those deputies who engage in this unconstitutional policy, custom, or practice to use excessive force in arresting mentally ill individuals.

74. The COUNTY's Sheriff's deputies' policy, custom, or practice of using excessive force in arresting mentally ill persons was the cause in fact of the deprivation of Plaintiff's civil rights when he was tased and beaten while being arrested on September 22, 2021.

75. DOES 1-5, employees and agents of Defendant COUNTY, operated under color of law when they intentionally, willfully, and wantonly deprived PLAINTIFF of his constitutional rights.

76. Further, on information and belief, Defendant COUNTY's Sheriff's Department has a longstanding practice of denying medical care to arrestees, especially those arrestees who are suffering from mental health crises.

77. Pursuant to this practice, on information and belief, COUNTY's Sheriff's deputies deliberately and expressly deny medical care to persons arrested and held in the County facilities, even if they request medical attention or are otherwise in obvious need of medical care.

78. On information and belief, PLAINTIFF alleges that this practice is rampant and pervasive throughout the COUNTY's Sheriff's department and that Sheriff's deputies are even ordered to withhold medical care indefinitely from arrestees regardless of their condition.

79. PLAINTIFF is informed and believes and thereon alleges that the COUNTY is aware that its Sheriff's Deputies have a custom and practice to deny medical care to inmates and arrestees, like PLAINTIFF, and has defended multiple lawsuits related to this pervasive policy, custom, or practice.

80. PLAINTIFF is informed and believes that COUNTY has not disciplined those officers who engage in this unconstitutional policy, custom, or practice to use excessive force in arresting mentally ill individuals.

81. The COUNTY's Sheriff's deputies policy, custom, or practice of using excessive force in arresting mentally ill persons was the cause in fact of the deprivation of PLAINTIFF's civil rights when he was denied medical care despite obviously suffering from multiple wounds due to being tased and beaten, while also suffering from a mental health crisis, on September 22, 2021 through his release.

82. DOES 6-10, employees and agents of Defendant COUNTY, operated under color of law when they intentionally, willfully, and wantonly deprived PLAINTIFF of his constitutional rights.

83. On information and belief, Defendants BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK are aware of these unconstitutional polices, practices, and customs and either implicitly or explicitly endorse the same.

84. As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

85. Accordingly, Defendants COUNTY, BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

V.

### FIFTH CAUSE OF ACTION

*Monell* Liability – Failure to Train

(By PLAINTIFF against Defendants COUNTY, BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK)

86. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 85 of this complaint with the same force and effect as though fully set forth herein.

87. At all relevant times, Defendants DOES 1 through 10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

88. The acts of Defendants DOES 1 through 10, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

89. On information and belief, Defendants COUNTY, BIANCO, and FRANSIK failed to properly and adequately train Defendants DOES 1-5 with regard to use of force generally. The training polices of Defendants COUNTY, BIANCO, and FRANSIK were not adequate to train their deputies to handle the usual and recurring situations with which they must deal.

90. On information and belief, Defendants COUNTY, BIANCO, and FRANSIK failed to properly train their deputies regarding the use of force. As a result of this deficient policy and deficient training, Defendants DOES 1-5 beat and tased PLAINTIFF, resulting in the injuries claimed in this lawsuit.

91. The training polices of Defendant COUNTY are and were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including de-escalation techniques, mental health identification and assistance, tactical communication, tactical positioning, and the use of less-than-lethal force.

92. Defendants COUNTY, BIANCO, and FRANSIK were deliberately indifferent to the obvious consequences of failing to adequately train the Sheriff's deputies.

93. The failure of Defendants COUNTY, BIANCO, and FRANSIK to provide adequate training caused the deprivation of PLAINTIFF's rights by Defendants DOES 1-5, inclusive; that is, Defendants' failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

94. Furthermore, on information and belief, Defendants COUNTY, BIANCO, VARISCO-FLORES, and VERNAL failed to properly and adequately train Defendants DOES 6-10 with regard to proper treatment of arrestees at the COUNTY's jail facilities, including the proper giving of medical care to obviously injured arrestees. The training policies of Defendants COUNTY, BIANCO, VARISCO-FLORES, and VERNAL were not adequate to train their deputies to handle the usual and recurring situations with which they must deal.

95. On information and belief, Defendants COUNTY, BIANCO, VARISCO-FLORES, and VERNAL failed to properly train their deputies regarding the identification and treatment of arrestees who require medical care. As a result of this deficient policy and deficient training, Defendants DOES 6-10 willfully, maliciously, and wantonly denied PLAINTIFF the medical care he desperately needed and sought while in the COUNTY's custody. This resulted in the prolonged suffering of PLAINTIFF and the injuries claimed in this lawsuit.

96. The training policies of Defendant COUNTY were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including mental health identification and assistance, identification of wounded or unwell arrestees, and proper steps to provide medical care to arrestees.

97. Defendants COUNTY, BIANCO, VARISCO-FLORES, and VERNAL were deliberately indifferent to the obvious consequences of failing to adequately train the Sheriff's deputies.

98. The failure of Defendants COUNTY, BIANCO, VARISCO-FLORES, and VERNAL to provide adequate training caused the deprivation of PLAINTIFF's rights by Defendants DOES 6-10, inclusive; that is, Defendants' failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

99. As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

100. Accordingly, Defendants COUNTY, BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK are liable to PLAINTIFF for compensatory damages pursuant to 42 U.S.C. § 1983. PLAINTIFF also seeks reasonable attorneys' fees and costs under this claim.

///
///
///

# VI.

# SIXTH CAUSE OF ACTION

### *Monell* Liability – Ratification

(By PLAINTIFF against Defendants COUNTY, BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK)

101. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 100 of this complaint with the same force and effect as though fully set forth herein.

102. At all relevant times, Defendants DOES 1 through 10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

103. The acts and omissions of Defendants DOES 1 through 10, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

104. Upon information and belief, a final policy maker for the COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOES 1 through 10, inclusive, and the bases for them, ratified the acts and omissions of Defendants DOES 1 through 10, inclusive, and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of DOES 1 through 10's acts, including, but not limited to, the excessive beating and tasering done against PLAINTIFF by DOES 1 through 5 and the willful and wanton denial of medical care to PLAINTIFF by DOES 6 through 10.

105. On information and belief, the official policies with respect to the incident are that Sheriff's deputies are not to use excessive force against an individual and that Sheriff's deputies are not to deny medical care to individuals who are in need. The actions of Defendants DOES 1 through 10, inclusive, deviated from these official policies.

106. Upon information and belief, a final policymaker(s), including, but not limited to Defendants BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK, has

determined (or will determine) that the acts of Defendants DOES 1 through 10, inclusive, were "within policy."

107. By reason of the aforementioned acts and omissions, Defendants BIANCO, VARISCO-FLORES, VERNAL, and FRANSIK are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests an entry of judgment in her favor and against Defendants COUNTY OF RIVERSIDE, BIACNO, VARISCO-FLORES, VERNAL, FRANSIK, and DOES 1-10, inclusive, as follows:

A. For Compensatory damages in the amount to be proven at trial;

B. For punitive damages against the individual defendants in an amount to be proven at trial;

C. For interest;

D. For reasonable costs of this suit and attorneys' fees; and

E. For such other further relief as the Court may deem just, proper, and appropriate.

SKAPIK LAW GROUP

Dated: September 20, 2023      By:   */s/ Matthew T. Falkenstein*
                                     Mark J. Skapik
                                     Geralyn L. Skapik
                                     Blair J. Berkley
                                     Matthew T. Falkenstein
                                     Attorneys for Plaintiffs
                                     CONSTANTINO JOSHUA
                                     ACEVEDO III

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

                                                                    SKAPIK LAW GROUP

Dated: September 20, 2023                         By:   */s/ Matthew T. Falkenstein*
                                                                           Mark J. Skapik
                                                                           Geralyn L. Skapik
                                                                           Blair J. Berkley
                                                                           Matthew T. Falkenstein
                                                                           Attorneys for Plaintiffs
                                                                           CONSTANTINO JOSHUA ACEVEDO III